**Lyman Moody BENNETT, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18385.**

United States Court of Appeals Fifth Circuit.

Dec. 28, 1960.

Rehearing Denied Feb. 17, 1961.

Holvey Williams, Joseph A. Calamia, Daniel Y. Garbern, El Paso, Tex., for appellant.

Russell B. Wine, U. S. Atty., San Antonio, Tex., Lawrence L. Fuller, Asst. U. S. Atty., El Paso, Tex., for appellee.

Before TUTTLE, Chief Judge, and JONES and BROWN, Circuit Judges.

TUTTLE, Chief Judge.

Appellant was convicted by a jury on each of two counts of an indictment charging:

That on or about November 13, 1959, in Hudspeth County, Texas, within the El Paso Division of the Western District of Texas, Lyman Moody Bennett, by pointing and firing same, used a deadly and dangerous weapon, to wit, a .300 Savage Ri[f]le to forcibly assault, resist, oppose, impeded [sic], intimidate, and interfere with United States Border Patrol Inspector Thurston C. McCutchen, a person designated in Section 1114 of Title 18, United States Code, while the said Thurston C. McCutchen was engaged in and on account of the performance of his official duties.

Second Count.

That on or about November 13, 1959, in Hudspeth County, Texas, within the El Paso Division of the Western District of Texas, Lyman Moody Bennett, by pointing same, used a deadly and dangerous weapon, to wit, a .300 Savage Rifle, to forcibly assault, resist, oppose, impede, intimidate, and interfere with United States Border Patrol Inspector

Carey C. Whitman, a person designated in Section 1114 of Title 18, United States Code, while the said Carey C. Whitman was engaged in and on account of the performance of his official duties. (Record, pp. 1–2.)

The essential words of the indictment are substantially those of 18 U.S.C.A. § 111[1] and it was under this provision that appellant was convicted and sentenced to 18 months on the first count and two years on the second, the second sentence to commence at the expiration of the first but being suspended for three years during which time appellant was to be placed on probation without supervision.

Appellant was at the time of the events on which his conviction was based the owner of a 70,000-acre ranch located entirely within the United States but situated on the Mexican border. A portion of that property within a very short distance of the border was used for the production of cotton, and it is uncontroverted that a number of "wetbacks", citizens of Mexico illegally within the territorial limits of the United States, were employed to pick the cotton. On the date in question several officers of the United States Border Patrol entered appellant's property for the purpose of searching for persons illegally within this country.[2] It appears that officers of the Border Patrol often made visits to appellant's ranch for this purpose and that they and appellant were on friendly terms.

It also appears that appellant had knowledge of the presence of at least one officer of the Border Patrol on November 13, 1959. That officer was driving a pickup truck, to which was attached an empty horse trailer, on a private road on appellant's ranch, when he was overtaken by appellant and stopped and asked the reason for his presence. Appellant ascertained that the trailer was empty. He then drove off in the direction of the cotton fields, and was closely followed by the officer in the truck. The officer testified that appellant fired one shot into the air from his rifle; appellant claimed that he did not.

Meanwhile, officers McCutchen and Whitman, on horseback, approached the cotton fields and captured two citizens of Mexico who attempted to run to the nearby river, then so shallow that it could be crossed on foot, presumably to return to the safety of their homeland. They brought these persons back to a road near the cotton fields; at about that time appellant arrived in his automobile, still followed by the truck. What next happened is in dispute, but the jury was authorized to believe the version told by the officers and several Mexican workers who were employed in the immediate vicinity.

According to Officer McCutchen, appellant drove up, got out of his car with his rifle in his hand, took several steps toward him, and pointed the rifle in his direction. "I hollered, 'Put that gun down', but before that he had said, 'Get those sons of bitches out of here or I am going to kill the whole goddam works.'" McCutchen drew his pistol, and then appellant shot and killed McCutchen's horse. "Then I came off my horse, I hit the ground about the same time my horse did, and fired twice at Moody. * * * I closed in on him by that time, as he

---

1. "Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

   "Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,-000 or imprisoned not more than ten years, or both."

2. 8 U.S.C.A. § 1357 provides: "(a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—* * * (3) * * * within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States * * *." No question touching on the constitutionality of this statute is before this Court.

turned his gun towards Whitman, and I hit him up on the side of the head with the pistol to keep from having to kill him." Appellant was struck on the head at least two times and was disarmed.

Appellant's story is materially different. He says he drove up to the cotton field, saw two men whom he took to be cowboys from the manner in which they were dressed, and shouted for them to get their horses out of the field. The men then crowded close to his automobile, abused him in opprobrious language, and fired two shots into the automobile, the first hitting the steering wheel and breaking into fragments which injured appellant's hand and the second passing through his arm and into the front seat. The shooting, says appellant, frightened the horses and he sought to take advantage of the situation by attempting to "booger", or scare them further, to which end he left his automobile and attempted to place himself between the two horsemen to prevent them from shooting at him. He claims that they fired additional shots at him and that it appeared that one of the horses might topple on him, at which point he shot the horse; it was only after this, says he, that he first recognized the rider of the dead horse as Officer McCutchen; he then dropped his rifle. He claims that McCutchen attempted to shoot him after this and did beat him with his pistol, McCutchen being stopped only by the intervention of Officer Whitman.

█ █ Of course, in a case in which the facts are so in dispute but in which each version of the story is believable, the jury might properly have determined either version to be true. The resolution of factual issues is the peculiar province of the jury, and an appellate court will not disturb their findings unless they appear to be without substantial evidence to support them. That is not the case here, nor does appellant attempt to argue that the verdict returned by the jury is against the weight of the evidence. Rather, his theory which, he argues, will justify a reversal for a new trial is based on other grounds.

The most substantial points raised by appellant in this appeal go to the sufficiency of the indictment. He contends that the indictment should have been quashed because it erroneously was based on the theory that a Border Patrol Inspector is a "person designated in Section 1114 of Title 18, United States Code"; that the indictment was insufficient in law in that it failed to allege that appellant "knowingly" assaulted an officer or that he feloniously or illegally did the act, appellant claiming that knowledge of the official character of the person assaulted is necessary to constitute the crime of which he was charged; that the indictment was duplicitous in that it charged more than one offense in each single count.

█ We find these objections to be without merit. Going to the first point, it seems abundantly clear that the provisions of § 111, taken in conjunction with those of § 1114, are sufficiently broad to include officers of the Border Patrol within that class of governmental personnel sought to be protected thereby. Section 1114 refers to "any immigration officer", and the mere fact that officers McCutchen and Whitman were engaged in duties relating to immigration should be enough to bring them within the protection of the acts. We hold that they were and are such immigration officers as contemplated by the act. It is unimportant that § 1114 does not include the words, "Border Patrol".

█ Neither are we persuaded by appellant's argument that the indictment was insufficient because it failed to include the element of scienter. The statute making criminal such acts as those of which he was convicted does not require that the doer of the act have knowledge that the person who is assaulted, resisted, opposed, impeded, intimidated, or interfered with is a federal officer. It merely requires that the act condemned be done in order to establish a violation of the statute, and the provisions of the section apply to "whoever" does the act, whether he does it with knowledge of the character of the person whom he

acts against and whatever his intent in so acting. The following language in McNabb v. United States, 6 Cir., 123 F. 2d 848, 854, certiorari granted 316 U.S. 658, 62 S.Ct. 1305, 86 L.Ed. 1736, reversed on other grounds 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, rehearing denied 319 U.S. 784, 63 S.Ct. 1322, 87 L.Ed. 1727, though directly applicable to the present § 1114 alone, is pertinent here:

"Appellants complain further that, at their request, the District Court should have charged the jury that the defendants could not be convicted unless they knew or had reasonable grounds to believe that the murdered man was a government officer. They charge error also in the refusal of the court to direct a verdict of acquittal for the reason that the appellants 'did not have notice or knowledge that the deceased was an officer connected with the Internal Revenue Department of the United States of America at the time the fatal shot was fired.'

"Refutation of this specious argument is found in the plain language of the statute: 'Whoever shall kill, as defined in sections 452 and 453 of this title, any United States Marshal * * * any officer, employee, agent, or other person in the service of the customs or of the internal revenue * * * while engaged in the performance of his official duties, or on account of the performance of his official duties, * * * shall be punished as provided under section 454 of this title'. * * *

"To be amenable to punishment under this section of the Criminal Code of the United States, the killer need not know that he is killing an officer, agent or employee of the United States. The ingredient of the crime condemned is the unlawful killing of a human being in some manner defined in Sections 452 and 453.

"Jurisdiction in the federal courts under Section 253 stems from the actuality that the person killed is a designated federal officer, engaged in the performance of his official duties. In the language of the statute quoted in excerpt, no exemption is expressly made of a killer who does not know that he is killing a federal officer of a class covered by the statute. Exemption may not be implied. The words and the intent of the statute are clear beyond the necessity for any canonical construction. The statute says, 'whoever shall kill,' not 'whoever shall kill with knowledge that he is killing' a federal officer of an enumerated class, shall be punished." 123 F.2d 848, at pages 854–855, footnotes omitted.

In this case, the circumstances are even more strongly posed against appellant's argument than they were against that of the defendants in the McNabb Case, supra, for here the trial judge instructed the jury that, to find the appellant guilty of the crimes with which he was charged, they must find that he knew that the officers he was assaulting were federal officers, and, presumably, the jury so found. They thus rejected appellant's argument that, because of their not being in uniform, he mistakenly thought that officers McCutchen and Whitmore were mere cowboys trespassing on his land, against whom he was attempting to protect his property and his person. The statute does not provide any of these exemptions for appellant, and, though the trial judge went farther than was necessary in requiring knowledge on the part of appellant, the indictment was itself sufficient in law and by his argument appellant does not make out a cause for reversal.

■ Nor do we find that appellant's argument as to duplicity is worthy of extensive consideration. Even assuming that this issue was raised in a timely manner, which appellee denies, the indictment followed the language of the statute under which it was brought, and this was sufficient to give appellant notice of the crime of which he was charged, the indictment being "sufficient to prove

any one or more of the charges". United States v. Segelman, 86 F.Supp. 114, at page 120, affirmed 3 Cir., 212 F.2d 88. See, e. g., on the issue of timeliness, Durland v. United States, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709.

 Turning to the other points raised before this Court by appellant, we agree with the government that the trial judge did not commit reversible error in commenting to the jury as to the manner and custom of sentencing aliens for illegal entry into the United States, or in commenting as to the propriety of the government's custom of holding aliens in this country until such time as they are used as witnesses. Nor were the arguments of the prosecuting attorneys and their several utterances here complained of so inflammatory that they might have prejudiced the jury against appellant. Upon the record taken as a whole, it appears that the attorneys for the government were doing little more than resorting to rhetoric in presenting their case to the jury, and it must be remembered that they, too, are advocates. DiCarlo v. United States, 2 Cir., 6 F.2d 364, at page 368. The evidence, standing alone, was amply sufficient for the jury to return a verdict of guilty against appellant; this is not a case in which a small amount of evidence to support the government's case is so enlarged by advocacy as to make it appear that the government had made out a very strong case against the defendant. See Nalls v. United States, 5 Cir., 240 F.2d 707.

 Finally, appellant urges upon this Court the argument that error was committed in that Judge Rice, who sentenced him after Judge Thomason, who had conducted the trial and who had thereafter recused himself from further proceedings in this matter, refused to disqualify himself from sentencing appellant and refused his motion for a new trial. We think that the district judges herein involved acted properly within the context of Rule 25 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. Judge Thomason's power to disqualify himself was a matter of his own discretion, and it does not appear that he abused that discretion in so acting after a verdict had been brought in. In the first place, he had been stricken with pneumonia, and, while his disability was not a permanent one, it seemed in doubt when he would be able to return to the bench and to dispose finally of this case. Secondly, he appears to have had knowledge of the fact that appellant was using his name in order to obtain affidavits from certain witnesses in order to support his motion for a new trial. Further, the Record indicates that Judge Rice thoroughly familiarized himself with the case before proceeding to the matter of sentencing. From this it should be abundantly clear that in so acting the judges not only attempted to dispose of this matter as speedily as justice to the parties would allow but that in so doing they sought to protect the rights of the defendant-appellant. There is no error which would justify a reversal on this ground.

For the reasons set out above, the judgment of the District Court is

Affirmed.