**UNITED STATES of America,
Appellee,**

v.

**George Samuel GITLITZ and Henry F.
Williams, Defendants-Appellants.**

**No. 56, Docket 30077.**

United States Court of Appeals
Second Circuit.

Argued Oct. 4, 1966.

Decided Nov. 16, 1966.

502

Michael S. Fawer, New York City (Robert M. Morgenthau, U. S. Atty., for S. D. New York, and Robert L. Latchford, U. S. Atty., on the brief), for appellee.

Joshua N. Koplovitz, New York City (Anthony F. Marra, New York City, on the brief), for appellants.

Before SMITH, HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

After a trial by the court sitting without a jury appellants were convicted of violating 21 U.S.C. § 176a.[1] They appeal alleging (1) that certain evidence should have been suppressed because it was obtained in violation of the Fourth Amendment prohibition against unreasonable searches and seizures and (2) that there is insufficient evidence to establish a basic element of the offense charged, to wit, their knowing possession of narcotics in the Southern District of New York. We find no error and affirm the convictions.

Early in the morning of May 28, 1965 United States Customs agents and agents of the California Bureau of Narcotics Enforcement, acting on a tip from a previously reliable informer, initiated a surveillance of defendant Gitlitz's motel room in San Diego, California. At 10:00 A.M. that same day Gitlitz drove up to the motel and carried two metal footlockers into his room; at 11:30 A.M. a truck of the Imperial Truck line pulled up to Gitlitz's room and the driver loaded the lockers on the van and drove away.

State Narcotics Agent McLaughlin and Customs Agent Burnett followed the truck for about two miles, then drew alongside, identified themselves and asked the driver to pull off the highway. After receiving permission to examine the two footlockers, Agent McLaughlin entered the van. Detecting an odor of marijuana, he pressed the top of each locker and found that the odor intensified. The agents requested that the driver proceed immediately to his terminal

---

1. § 176a. Smuggling of marihuana; penalties; evidence; definition of marihuana.

Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned for not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury.

but permission was denied by the Imperial Truck Lines dispatcher. Instead the driver released the lockers and corresponding bills of lading (which consigned the lockers to a fictitious Paul Brock) to the agents and they transported them directly to the Imperial Terminal in Chula Vista, California.

The footlockers were then transferred to the Denver & Chicago Truck Company terminal, loaded on a Denver & Chicago van, and shipped to that company's terminal in North Bergen, New Jersey, where they were unloaded in the early morning of June 4th. A second smell test was conducted at that time and the lockers were then stored in a separate room by the terminal manager. On June 8th two federal narcotics agents opened the lockers, without obtaining a search warrant, and determined that they did in fact contain marijuana.

At about 2:30 P.M. on June 8 Gitlitz went to the office of Mel's Express, a delivery service in New York City, and arranged for the lockers to be picked up in New Jersey and delivered to him in New York. While at Mel's Express, Gitlitz telephoned the North Bergen terminal and established that the footlockers were available; he also executed, in the name of Paul Brock, a letter authorizing release of the lockers to the Mel's Express driver and in a second phone call he notified officials at the North Bergen terminal of this fact.

The Mel's Express driver picked up the footlockers at about 5:00 P.M. and proceeded to 647 East 5th Street, New York City. Federal and New York City narcotics agents followed the truck to this address. Detective Perez of the New York City Police Narcotics Squad had an undisclosed conversation with the truck driver and then assisted him in making the delivery. They carried the lockers to apartment 3–D; receiving no answer they waited. A short time later federal narcotics agent Leya saw Gitlitz loitering in the vicinity.

At approximately 6:55 P.M. Williams entered the building, approached the two men on the third floor and said, "Those are my footlockers. How much do I owe you?" After Williams paid the charges, signing the receipt "Paul Brock," Perez and the driver left. Leya, who had witnessed the delivery, arrested Williams when the latter picked up the lockers and was about to leave them with the woman in apartment 3–C. Using a key found in Williams's possession, Leya opened the two lockers. He then left Williams in the custody of other agents and went outside to a nearby corner where he found Gitlitz in a telephone booth and placed him under arrest.

### I.

Appellants contend that the June 8th seizure of the marijuana violated their constitutional rights under the Fourth Amendment. It is conceded that the seizure was valid if it was incident to a lawful arrest. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Rabinowitz, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653 (1950). However, while appellants agree that at the time they were taken into custody the agents had probable cause to arrest them, they argue that some of the evidence which supplied the probable cause was obtained in the course of an unreasonable search and seizure in California. Relying on the doctrine proscribing the "use of all evidence obtained as an indirect result of such illegal activity," United States v. Paroutian, 299 F.2d 486, 489 (2d Cir. 1962), they claim that the knowledge acquired during the California search cannot be used to establish probable cause. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Corngold v. United States, 367 F.2d 1 (9th Cir. 1966) (en banc); United States v. Paroutian, supra, 299 F.2d at 488–489.

The search alleged to have violated appellant's rights was that conducted by Agent McLaughlin when he entered the Imperial Lines truck, smelled marijuana and compressed the lid of the footlockers thus determining that they were the

source of the odor. We find it unnecessary to decide whether compressing the footlockers constituted a search, cf. Hernandez v. United States, 353 F.2d 624 (9th Cir. 1965), cert. denied, 384 U.S. 1008, 86 S.Ct. 1972, 16 L.Ed.2d 1021 (1966), or whether appellants have standing to object to McLaughlin's entering the truck, see United States v. Bozza, 365 F.2d 206 (2d Cir. 1966), since appellants waived their objections by failing to interpose them below. United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965) (en banc) cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966) ; United States v. Percodani, 363 F.2d 867 (2d Cir. 1966).

Appellants did object to the introduction of the marijuana in evidence both at the trial and earlier when they moved to suppress the evidence. At the hearing on the motion they did not attack the actions of the government agents in California. Instead they contended that there had been an illegal search in North Bergen, New Jersey, which invalidated the subsequent arrests and seizure.

At the trial it was disclosed for the first time that McLaughlin and Burnett had removed the lockers from the van and driven them directly to Chula Vista. Appellants cited this seizure as a further ground for objection and renewed their objection on the ground of the agents' activities in New Jersey. This was in keeping with their apparent trial strategy since they were contending that the agents had such complete dominion and control over the lockers that their own custody was aborted.[2]

■ Since defendants did not at any time refer adequately to McLaughlin's actions in boarding the truck and conducting the smell tests as ground for objection, they "failed reasonably to apprise the trial judge of the grounds asserted here." United States v. Indiviglio, supra, 352 F.2d at 279. See On Lee v. United States, 343 U.S. 747, 749 n. 3, 72 S.Ct. 967, 96 L.Ed. 1270 (1952) ; United States v. Sten, 342 F.2d 491, 493 (2d Cir.), cert. denied, 382 U.S. 854, 86 S.Ct. 103, 15 L.Ed.2d 91 (1965). Had the objection been more specific the government could have introduced evidence to counter it, for example, proof that the smell test was conducted under the direction of Customs Agent Burnett who was authorized by statute to make such a search. 19 U.S.C. § 482. In the absence of specific objection, defendants cannot take advantage of the purported error. Nor do we find any such plain error, affecting substantial rights, as would warrant our consideration of appellants' contentions despite the failure to object. See Lopez v. United States, 373 U.S. 427, 436–437, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963) ; Fed.R.Crim.P. 52(b).

Evidence which was, therefore, admissible established probable cause for the arrests quite independently of the allegedly unreasonable seizure in California and search in New Jersey.

II.

■ The defendants also claim, as they did below, that neither of them had sufficient possession of the marijuana in New York to establish a violation of 21 U.S.C. § 176a. Gitlitz concedes that

---

2. Mr. Stone: I object to the containers and any contents that might be in there.
  The Court: On what grounds?
  Mr. Stone: On the grounds that they were seized illegally and without warrant by an officer of the California State Police, who was not authorized to make seizures under customs law, that they seized this without a warrant, took it into their custody, and once it was taken into their custody, any particular custody of any other individuals was aborted, that a seizure can only be maintained, your

Honor, by a warrant or after a lawful arrest without a warrant.
  In this case there was not a warrant for the seizure of these items, nor did an arrest precede the seizure of these items. There was a clear and unequivocal seizure and custody by the California officers before either of these defendants were arrested, approximately ten days thereafter; that this seizure prevented any further individual from maintaining custody or control of these items, that this seizure was in violation of the defendants' constitutional rights.

he may have exercised dominion and control over the footlockers when he caused them to be shipped from California to New Jersey and then to New York. However, he argues that once the lockers were in New York the activities of the government agents prevented him from having the required "capability to maintain control." Rodella v. United States, 286 F.2d 306, 311–312 (9th Cir. 1960), cert. denied, 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed. 2d 199 (1961).

This court recently rejected a similar contention in United States v. Pardo-Bolland, 348 F.2d 316, 323–324 (2d Cir.), cert. denied, 382 U.S. 944, 86 S.Ct. 388, 15 L.Ed.2d 353 (1965). We there stated that "law enforcement agencies should not be denied the opportunity of allowing some part of the contraband to continue in movement for the purpose of snaring and acquiring evidence against all those implicated in the particular plan." It follows that the agents' actions in this case did not impair Gitlitz's constructive possession which, as the court below found, was evidenced in part by his possession of the bill of lading controlling the lockers, his direction to Mel's Express to pick up the lockers, and his signing of the letter of authority permitting release of the lockers to the Mel's Express driver.

Williams argues that his temporary possession of the footlockers in New York is too fleeting to sustain his conviction. Substantial evidence supports the conclusion that Williams had actual possession of the contraband. When the footlockers were delivered to 647 East 5th Street he claimed that they belonged to him, signed the receipt for their delivery, paid the freight charges and arranged for temporary storage of the lockers in the apartment next door. He had a key to the lockers in his possession. In the case relied upon by Williams, United States v. Santore, 290 F.2d 51, 64–65, 79 (2d Cir. 1960) (en banc), cert. denied, 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961), the sole evidence of defendant's control was his possession of the contraband for less than half a

minute, and that possession was voluntarily relinquished. We held that this did not constitute the degree of control from which it could reasonably "be inferred that the possessor was going to commit one or more of the specified acts which have been declared criminal." 290 F.2d at 64. In the present case the control exercised by Williams was much more substantial.

The judgment of conviction is affirmed.