UNITED STATES of America, Appellee,

v.

Colin Emanuel McKENZIE, Appellant.

No. 430, Docket 32105.

United States Court of Appeals Second Circuit.

Argued March 11, 1969.

Decided March 28, 1969.

Lawrence W. Kessler, New York City (Milton Adler, New York City, on the brief), for appellant.

John R. Wing, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, John H. Doyle, III, Asst. U. S. Atty., on the brief), for appellee.

Before MOORE, KAUFMAN and FEINBERG, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Colin McKenzie was convicted in the United States District Court for the Southern District of New York, after a jury trial, upon a one count indictment which charged that on or about October 6, 1967, he "unlawfully, wilfully and knowingly did forcibly assault, resist, oppose, impede, intimidate and interfere with" two federal Immigration Officers while they were attempting to arrest him in the course of their official duties, all in violation of 18 U.S.C. §§ 111 and 1114.[1] The trial judge suspended the imposition of sentence and placed McKenzie on probation for a period of one year on condition that he comply with all orders and directions of the Immigration and Naturalization Service. Subsequently, on December 29, 1967, he was deported to British Honduras, where he is presently residing. McKenzie appeals from the judgment of conviction, claiming that the trial court's charge to the jury was erroneous. We affirm the judgment.

The appellant is a twenty-one year old citizen of British Honduras. He entered the United States in 1964 on a student visa which was to be valid for four years if annually renewed. After completing his first year of study at the RCA Institute, McKenzie renewed his visa for the 1965–66 academic year, but because of financial difficulties he abandoned his schooling early in the following year and sought employment. When this occurred McKenzie knew he "had no right to stay here any more." On October 6, 1967, when he was apprehended by the immigration officers, McKenzie was working at the Saunders Formal Wear Company in New York City pseudonymously as Emanuel Young.

The account given at the time by immigration officers Meyer and Rufft of the events giving rise to the conviction differed considerably from McKenzie's version. Meyer testified that he and Rufft entered the Saunders Formal Wear premises and spoke with the man in charge, Vincent Pissaro, who led them into the stock room. While Rufft wait-

---

1. 18 U.S.C. § 111 provides in part:
   "Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his of-ficial duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both."
   And § 1114 includes in the list of federal officers so protected "any immigration officer."

ed at the exit, Pissaro pointed out McKenzie to Meyer. According to Meyer, he showed McKenzie his shield, identification card, and an arrest warrant, saying at the same time that he was an immigration officer and that McKenzie was under arrest. To this McKenzie's response was "I don't know what you are talking about." He then brushed past Meyer and walked away. When Meyer pursued and again sought to arrest him, McKenzie said he had to go to the bathroom, knocked the warrant out of his hand, and fled around a corner towards an exit, where he was intercepted by Rufft. A struggle ensued, with McKenzie insisting that he had to go to the bathroom, while Meyer, having brought out his handcuffs, attempted to put them on him and Rufft held him in a head lock. After a struggle lasting about five minutes, McKenzie was finally subdued. Rufft testified similarly as to the circumstances of the struggle.

McKenzie's version differed. He testified that as he was on his way to the lavatory he encountered Meyer, who stated "I want to talk to you," but that he was given no indication of Meyer's identity. McKenzie said he merely continued on the way toward his destination when Rufft jumped on him and choked him, while Meyer drew out his handcuffs. McKenzie insisted at the trial that he had not known the men were federal officers until Meyer drew out his handcuffs, and that at that time

he continued to struggle to get Rufft's arm away from his throat.

We should note at the outset that McKenzie's contention that he was convicted of the "resist" rather than "assault" provisions of § 111 is correct. Thus, in his summation to the jury, the United States Attorney specifically abandoned any claim that McKenzie was guilty of assault.[2] And the trial judge effectively precluded the jury from considering the possibility that McKenzie had committed an assault when in reading the statute and the indictment to the jury and in defining their terms he omitted any reference to the assault provisions. Moreover, the communication from the jury after its deliberations were under way requesting a redefinition of "resisting arrest" and the judge's response conclusively foreclosed any consideration of assault.

In charging the jury on the elements of the crime of resisting arrest under § 111, the trial judge instructed that in order to convict, the jury must find with respect to scienter:

"that the defendant committed this act unlawfully, wilfully, and knowingly.[3] The government is not required to prove that the defendant knew that the person resisted, opposed, impeded, or interfered with was a federal officer."

McKenzie's sole contention, raised for the first time on appeal, is that this charge was fundamentally erroneous because it failed to instruct that although

2. "In any event, at that time I said in the opening basically this was a resisting arrest [case] and that's exactly what it is. I would submit that the evidence shows that there was a technical assault as well as all the other crimes charged but I think that in considering the case you should direct your attention to whether or not there was a forcible resist or [sic] arrest.

    \*    \*    \*    \*    \*

"We are not contending this was a wild, bloody melee. It is just a resisting arrest."

3. The trial judge further defined these terms as follows:

"An act is done 'knowingly' if it is done voluntarily and purposefully and not because of mistake, accident, mere negligence, or other innocent reason.

"An act is 'wilful' if it is done knowingly and deliberately.

" 'Unlawfully,' of course, means contrary to law; hence, to do an act unlawfully means to do something which the law prohibits.

"In determining whether a defendant has acted knowingly and wilfully it is not necessary for the government to establish that the defendant knew that he was breaking any particular law or any particular rule."

the defendant need not know that the person resisted is a *federal* officer, he must know that the person is *an* officer of the law. McKenzie argues that § 111 is essentially a jurisdictional statute. It provides a federal forum for the common law crimes of assault and resisting arrest in cases where the victim is a federal officer. Traditionally, he urges, knowledge of the identity of the one assaulted is not necessary; one takes one's assaultee as one finds him. Hence, one commits a federal crime by assaulting a federal officer if he intends to commit the assault, though he has no knowledge that the victim is an officer or a federal officer. In contrast, he contends, the crime of resisting arrest traditionally requires that the defendant know the person resisted is a law enforcement agent.[4] Therefore, McKenzie submits, in order to commit the crime of resisting under § 111, the defendant similarly must be aware that he is resisting an officer of the law, although he need not realize the officer is a federal agent.

Had this argument been properly presented in the trial court, we would not be inclined to dismiss it as devoid of merit. Although there is language in some cases to the effect that knowledge of the identity of the person acted against is not necessary for a violation of § 111, e. g., United States v. Montanaro, 362 F.2d 527 (2d Cir.) (*per curiam*), cert. denied 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966); United States v. Lombardozzi, 335 F.2d 414, 10 A.L.R.3d 826 (2d Cir.), cert. denied 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964); Bennett v. United States, 285 F.2d 567 (5th Cir.), cert. denied 366 U.S. 911, 81 S.Ct. 1087, 6 L.Ed.2d 236

(1961), those cases are not apposite for all involved crimes of assault rather than resistance. We believe the rule urged by McKenzie, and adopted by the Sixth Circuit in United States v. Rybicki, 403 F.2d 599 (1968), has much to commend it. See also Burke v. United States, 400 F.2d 866 (5th Cir. 1968); United States v. Heliczer, 373 F.2d 241, 248 (2d Cir.), cert. denied 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967); United States v. Wallace, 368 F.2d 537, 538 (4th Cir. 1966).

In view of the proceedings in the trial court, however, we do not believe it appropriate to consider the court's omission as "plain error," see Rule 52(b) F.R.Crim.P., and to reverse on this ground. The record reveals that McKenzie's trial counsel did not merely fail to request an instruction on scienter or to take exception to the court's charge. We might feel at liberty to notice the error nevertheless were that all that was before us. E. g., United States v. Rybicki, supra; United States v. Pugliese, 346 F.2d 861 (2d Cir. 1965). But here, as distinguished from *Rybicki* and *Pugliese*, it is clear that the omission was the result of counsel's deliberate tactical decision to present the case on a different theory. Thus, in his opening to the jury, counsel conceded that officers Meyer and Rufft had identified themselves as federal agents when they first approached McKenzie. Counsel's theory was that although McKenzie had resisted arrest, his action was not wilful because he had gotten "frightened, got scared" when he realized that the law had caught up with him. In counsel's words: "He did this because he got excited and * * * because he was also attempting to go to the bathroom."[5]

---

4. See, e.g., City of Seattle v. Gordon, 54 Wash.2d 516, 342 P.2d 604 (1959); People v. Galick, 11 Misc.2d 961, 176 N.Y.S. 2d 479 (1958).

5. Thus, counsel stated:
"Mr. McKenzie will take the stand and he will testify that on October 6, 1967 two immigration officers did come to the place where he was employed, that

he was on his way to the bathroom, *that they did identify themselves as immigration officers, they told him to stop.* Mr. McKenzie got frightened, got scared; he had to go to the bathroom, he had an altercation with one of the immigration officers, and he will tell you whether he resisted or not—it is not too clear to me—he may have pushed the immigration officer or

Thus, not only did counsel fail to apprise the court of the issue now sought to be raised, so that it might have, and probably would have been developed and dealt with properly at that time, United States v. D'Amico, 408 F.2d 331 (2d Cir. decided February 20, 1969) *(per curiam)*; United States v. Gitlitz, 368 F.2d 501 (2d Cir. 1966); United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965), cert. denied 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966), but he actually led the court to believe that it need not be considered at all. Absent any claim that counsel was incompetent, which has not even been suggested in this case, we believe that McKenzie must be bound by the tactical choice—wise if it had been successful, unwise when not, as in most every criminal case—to present the case to the jury on a different theory. See Henry v. Mississippi, 379 U.S. 443, 450–451, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

Finally, we note that although McKenzie testified that officers Meyer and Rufft had not identified themselves initially, he admitted that he realized they were law enforcement officers when Meyer pulled out his handcuffs. It is undisputed that the greater part of the struggle which constituted the resistance occurred after the handcuffs came into view. This admission itself undoubtedly fortified McKenzie's counsel in pursuing the trial tactic which he did on the issue of scienter.

We believe this record precludes us from recognizing McKenzie's claim of error at this late date.

Affirmed.

scratched him, but he will testify that he did not do this wilfully and he did not do it intentionally. He did this because he got excited and that [sic]

MOORE, Circuit Judge (concurring in the result):

I concur in the result. In the light of our decisions in United States v. Montanaro, 362 F.2d 527, *cert. denied* 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966) and United States v. Lombardozzi, 335 F.2d 414, *cert. denied* 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964), I do not find any omission of an essential element in the trial court's charge. Nor do I regard United States v. Rybicki, 403 F.2d 599 (6th Cir. 1968) as stating a rule at variance with our decisions. In *Rybicki* reversible error was found in the trial court's failure to charge that "an element of the crime charged to Rybicki was knowledge that the Internal Revenue agents were such and were engaged in performing their duty." The court did not instruct that "Rybicki had to know that the men were officers and were in the performance of their duties."

Here, however, after reading the indictment, which alleged, in part, that defendant knowingly resisted immigration officers in the performance of their duties, there were specified five essential elements which concluded with the defendant's "committing this act [resisting immigration officers] unlawfully, wilfully and knowingly." The only qualification which the court made as to knowledge was that the government did not have to prove that the defendant knew that the person resisted was "a federal officer."

Therefore, I cannot join in any statement, even though it be dictum, in the majority opinion that there is a *Rybicki* rule which "has much to commend it" because the deficiency in the *Rybicki* charge is not found here.

he did this because he was also attempting to go to the bathroom." (Emphasis added.)