**UNITED STATES of America,**
**Appellee,**

v.

**Joel ULAN, Defendant-Appellant.**

**No. 366, Docket 34028.**

United States Court of Appeals
Second Circuit.

Argued Dec. 16, 1969.

Decided Jan. 29, 1970.

Frederick H. Cohn, Lefcourt, Garfinkle, Crain, Cohn, Sandler & Lefcourt, New York City, for appellant.

Jerome C. Ditore, Asst. U. S. Atty., Eastern District of New York (Edward R. Neaher, U. S. Atty., Eastern District of New York, on the brief), for appellee.

Before FRIENDLY, SMITH and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Joel Ulan appeals from his conviction for assaulting and interfering with U. S. Deputy Marshal William B. Gallinaro in

---

7.  The case was remanded for a determination whether Benner had been a felon at the critical time.

the performance of the Marshal's official duties. The jury could have found from the evidence that the events leading up to the commission of the offense and the facts of the offense itself were substantially as follows.

On May 27, 1968 Edward Oquendo, who had been convicted of refusing to be inducted into the Armed Services, surrendered himself in the courtroom of the United States District Court in the Eastern District of New York, before Judge Joseph Zavatt, to commence the service of the five year sentence which had been imposed upon him. There were also present in the courtroom well over a hundred persons, including Ulan, who were sympathetic to Oquendo. Eight or ten deputy U. S. Marshals had been assigned to duty there. When the court remanded Oquendo to the custody of the Marshal, Oquendo raised his right arm with fist clenched. Immediately nearly all of the spectators, exclusive, however, of the appellant Ulan, stood up and began a noisy demonstration, shouting insulting and derogatory names and comments at the court. Judge Zavatt then ordered the Marshals to clear the courtroom and escort the demonstrators outside of the courthouse.

After a substantial number had left the courtroom, Ulan joined the stream of departing demonstrators who, escorted by the Marshals, went down a flight of stairs and out through an inner and outer set of doors and the vestibule between. As Ulan was about to go out one of the outer doorways, a demonstrator, identified only as a stocky fellow, turned around, when two or three feet from the outer doors, and faced Deputy Marshal Gallinaro, who was ushering the demonstrators out and encouraging them to leave. The stocky fellow expressed an intention not to leave and asked the Deputy Marshal what he would do about it. The Marshal said he would have to arrest him; and, when the man said he would not leave, the Deputy Marshal took him by the arm and told him he was under arrest. Meanwhile, Ulan, who had reached the street, heard the confrontation and returned inside to a point just back of the stocky fellow and asked Deputy Marshal Gallinaro in an abusive tone what he was doing. When Gallinaro told the stocky fellow that he was under arrest, Ulan said, "You're not arresting anyone" and struck Gallinaro in the face and grabbed and pulled him by the necktie. Other demonstrators had joined the fracas and with Ulan pulled the Deputy Marshal into the crowd. Gallinaro had seized Ulan by the arm and in the ensuing melee dragged him down as he, Gallinaro, fell. At the time there were three other Deputy Marshals in the area and in a short time they extricated Gallinaro and arrested and confined Ulan.

The sole issue on appeal concerns the correctness of that portion of the trial judge's instructions to the jury, to which Ulan excepted, that it was not an essential element of the offense charged, and the Government was, therefore, not required to prove, that the defendant knew Deputy Marshal Gallinaro was a federal officer at the time of the incident.

This instruction by the court was based upon United States v. Lombardozzi, 335 F.2d 414 (2 Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964); United States v. Montanaro, 362 F.2d 527 (2 Cir.), cert. denied, 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966), and other cases in this Circuit which have followed them, which hold that scienter, i. e. knowledge on the part of the accused that it was a federal officer that he was assaulting, is not an essential element of the offense which the Government must prove.

The appellant recognizes the holding of these cases but asserts that there is an exception to the rule to which this court referred in the recent case of United States v. McKenzie, 409 F.2d 983 at page 986 (2 Cir. 1969), where it said, by way of dictum, "We believe the rule urged by McKenzie, and adopted by the Sixth Circuit in United States v. Rybicki, 403 F.2d 599 (6 Cir. 1968), has much to commend it." In *Rybicki* the accused had resisted the seizure of his truck by two officers of the Internal Revenue Service who were

endeavoring to collect an income tax which he owed. The Sixth Circuit reversed Rybicki's conviction on the ground that the trial court had committed plain error in refusing to charge that scienter was an essential element of the offense of resisting the seizure by federal officers. The *McKenzie* case was one of resisting arrest and the defense was that, although in cases of an assault upon a federal officer, as in *Lombardozzi,* scienter is not an essential element of the offense, in cases of resisting arrest, as in a defendant's resisting seizure of his property, scienter is an essential element. The court in *McKenzie* did not order a new trial but affirmed the conviction because no exception had been taken to the charge and the defendant had conceded that he knew the persons seeking to take him into custody when he resisted them were, in fact, federal officers.

In its decision in *Rybicki* the court sought to work out a formula which gave recognition to two kinds of violations of 18 U.S.C. § 111: one which did not require that scienter be included as an essential element of the offense and the other which did. It cited *Lombardozzi* and *Montanaro* as examples of the first kind and held that the distinguishing characteristic of this type of § 111 offense could be determined "by the fact that the offenses there involved would have been crimes regardless of the person against whom they were committed." the court considered the case before it as of the second type, which did require scienter as an essential element. It said, "Here, if the car 'thief' had not been an officer acting in an official capacity, Rybicki would have had the right to threaten and use reasonable force to prevent the theft of his property."

The statute itself suggests no such difference; and, even if it were an acceptable anomaly to describe a statutory offense as sometimes possessing a particular number of essential elements (such as the four described in the charge of the court in the present case) and sometimes one more, this definition which purports to distinguish *Lombardozzi* and *Montanaro* is difficult to apply.

This court in its dictum in *McKenzie* appears to have adopted the interpretation of the *Rybicki* rule offered by McKenzie's counsel, which was that when the violation of § 111 is an assault, scienter is not an essential element, but where the violation is one of resisting arrest, it is. *McKenzie* classified both *Lombardozzi* and *Montanaro* as "assault cases." While this is true of *Lombardozzi* because the assaulted F.B.I. agent was not seeking to make an arrest, the assaults of which Montanaro was charged and convicted were made by him upon federal agents who were attempting to arrest him. A great difficulty in trying to apply such a distinction stems from the fact that most cases of resisting arrest include an assault by the subject of the arrest against the person endeavoring to make it.

Moreover, the *Rybicki* court's definition of those interferences which do not require scienter as an essential element as those which "would have been crimes regardless of the person against whom they were committed" could have included Rybicki himself. Threatening bodily harm to another with a double barrelled, apparently loaded, shotgun as Rybicki did, is a crime in most jurisdictions, even if the persons threatened are Internal Revenue Agents, unless the attendant circumstances make the use of force, which would otherwise be criminal, defensible and justified. The pertinent question, therefore, is what circumstances justify the use of force in preventing a federal marshal or other specified officer or employee [1] from performing his duties?

In the light of the rationale in *Lombardozzi,* a lack of scienter cannot be given the effect of an absolute defense to a § 111 violation. There can, however, be a combination of circum-

1. § 111 was enacted for the protection of those officers and employees of the United States designated in Title 18 U.S.C. § 1114.

stances which may provide a defendant, in either an assault or resisting arrest case, with a defense through justification for his use of force. In going forward to present evidence of such circumstances, there is no doubt that a defendant may show that he had no knowledge that the person he assaulted or resisted was a federal officer or employee acting in the performance of his official duties. The Government, on which the over-all burden of proof rests, may, of course, offer evidence in rebuttal.

Such justifying circumstances were discussed by this court in United States v. Heliczer, 373 F.2d 241 (2 Cir.), cert. denied, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967). We said at page 248:

> "Cases of this sort involving the making of an arrest differ from those like *Lombardozzi* in which no arrest was being made, because in certain arrest circumstances the holding in *Lombardozzi* comes into collision with the right of self-defense. As the law now stands (1) a person being arrested has the right to resist with reasonable force an unlawful arrest by a private citizen or a peace officer and (2) one who has no actual knowledge that he is being arrested and the circumstances are such as to afford him no reasonable ground to suppose that he is being arrested and he has no fair opportunity to inquire or otherwise ascertain why another is taking or attempting to take him into custody and the situation in which he finds himself is such as to cause him reasonably to believe that he is being subject to a hostile attack against his person, has a right to use reasonable force to defend himself. If, in either of these two sets of circumstances, the arrest was being made by a federal agent engaged in the performance of his official duties, it is probable that a modification or limitation would be placed on the reach of the interpretation and application of the *Lombardozzi* holding as extended to arrest cases."

Lack of scienter, highly relevant and material to this set of circumstances, is necessarily included within them. Therefore, while *Lombardozzi* and *Montanaro* are still effective to prevent a lack of scienter alone from operating as a complete bar to a conviction for an offense charged under § 111, such an absence of knowledge nevertheless remains one of the combination of circumstances which together may justify and make defensible an assault or resistance to arrest.

*Heliczer* was cited in *McKenzie* in support of the comment on "the rule * * * adopted by the Sixth Circuit" in *Rybicki*, but we take the dictum in *McKenzie* to mean no more than that the circumstances faced by the defendant in *Rybicki* might well have brought the case within the second set of circumstances above quoted from *Heliczer*.

■ We have discussed *McKenzie* and *Rybicki* only because the appellant has relied so heavily upon them. Actually, they are not applicable to the present case, because Ulan was not being subjected to arrest when he committed the offense charged. Rather, he was a voluntary intervenor seeking to prevent the arrest of his co-demonstrator by Deputy Marshal Gallinaro.

Ulan testified in his own behalf, and his version of the events did not vary significantly from those of the Marshals until he reached the point when he told of being outside of the courthouse, looking back toward the building, where he saw a scuffle in the doorway and saw "a gentleman pushing a demonstrator." Ulan said that he went over to them and questioned the gentleman in what he conceded was an abusive manner and told him that the demonstrator was leaving on his own accord and did not need to be pushed; whereupon the gentleman "started to go" for him and "to strike" at him, so that in self-defense he grabbed the man by the tie. Others joined the fracas and, in the resulting melee, Ulan and his claimed assailant were forced to the floor. The gentleman to

whom Ulan referred was Deputy Marshal Gallinaro. Ulan also testified that Gallinaro was not wearing a badge and did not identify himself in any way; it is to be noted, however, that Ulan at no time stated that he did not then know that Gallinaro was a Federal Marshal. As Ulan had observed, and to some degree participated in, the events leading up to the confrontation with Gallinaro, it is incredible to suppose that he did not know that Gallinaro was a federal official.

Whether he did or not, however, has no bearing on the case as it stands. Deputy Marshal Gallinaro, corroborated by other witnesses, testified that when he put his hand on the stocky fellow and told him he was under arrest, Ulan said, "you're not arresting anyone" and struck the Marshal and grabbed him by the tie and pulled him down. Ulan testified that it was Deputy Marshal Gallinaro who first attempted to use physical force against him and that he, Ulan, did no more than try to defend himself. The issue of self-defense, which carried with it the question of who was the aggressor, was the only justification which Ulan's case suggested for his actions; and it was submitted to the jury under full instructions from the court to which no exception was taken. The

jury rejected Ulan's claim of self-defense and found that he was the aggressor and that Gallinaro did not unlawfully use or threaten to use force against him.

Under the circumstances, Ulan was clearly an intervening bystander and the correctness of his conviction under § 111 is governed by the decision in Heliczer, *supra*, 373 F.2d at 248, which held:

"A bystander, such as Heliczer, has no right to intervene if there is reason for him to be aware that the arrest is being made by a peace officer or that the arrest is lawful. Also, as a general rule, *he has no right to intervene if in fact a lawful arrest is being made by a federal agent, whether the bystander knows it or not, because, like the person being arrested, he is subject to the holdings in* Lombardozzi *and* Montanaro *and to a great degree takes a chance in assisting another to resist arrest.*" [Emphasis supplied and footnote omitted.]

In the present case, there was no claim that Gallinaro was not in fact a Federal Deputy Marshal, and no claim was made that the arrest of the co-demonstrator by the Deputy Marshal, which Ulan sought to prevent, was not lawful.[2]

The judgment of conviction is affirmed.

---

2. This case comes within the above quoted portion of the holding in *Heliczer* but neither the present decision nor *Heliczer* should be construed to say that a reasonable mistake of fact is never a defense for one intervening on behalf of one who is being lawfully arrested. The opinion in *Heliczer* (p. 249) goes on to describe circumstances which might so operate, particularly where speedy action was called for. It said,

"* * * before intervening he must make a reasonable effort to inquire into the nature and purpose of the attempted arrest and the authority of the one making it, unless circumstances make such inquiry impossible or fruitless. As in the case of a person being arrested, the circumstances may reasonably appear to the bystander to be nothing but a private assault and in no respect an official arrest and the situation so grave and extreme, involving risk of death or serious bodily harm, that swift action with no pause for inquiry was demanded."

In the present case there was no evidence of such extreme or emergent circumstances nor was there any inquiry as to Marshal Gallinaro's authority.