**UNITED STATES of America**

v.

**Willie GOODWIN, Jr., Appellant.**

**No. 19489.**

United States Court of Appeals, Third Circuit.

Argued Jan. 12, 1971.

Decided April 5, 1971.

Edward K. Nichols, Jr., Nichols & Dixon, Philadelphia, Pa., for appellant.

Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before SEITZ, and VAN DUSEN, Circuit Judges, and MASTERSON, District Judge.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Defendant appeals his conviction by a jury on a one-count indictment brought under 18 U.S.C. § 111.[1] The indictment charged that defendant did "knowingly, unlawfully and wilfully, forcibly assault, resist, oppose, impede, intimidate and interfere with [two named FBI agents], knowing them to be such Officers, who were then and there engaged in the performance of their official duties."

We narrate the facts as the jury was entitled to find them. For more than three years, the Philadelphia office of the FBI had been seeking the defendant to arrest him on a warrant for unlawful flight from South Carolina to avoid prosecution for housebreaking and lar-

---

1. Section 111 provides in pertinent part as follows:

"Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both."

ceny. Several FBI agents had visited his mother's residence and had advised various members of his family that they were trying to locate him, but their efforts were unsuccessful until December 9, 1969, when they were informed by a car dealer that defendant had recently purchased a new automobile and had given his mother's address on the bill of sale. Upon proceeding to that address, two agents observed a car pulling away from the curb whose appearance and license number coincided with the information given them by the car dealer. The agents followed the car for several blocks. Finally, when defendant's car stopped for a red light, one of the agents got out of his car and approached defendant's vehicle. He opened the door on the driver's side, took defendant's arm, and said, "Willie Goodwin, I am a Special Agent of the FBI. There is a warrant for your arrest for unlawful flight to avoid prosecution." He did not show his credentials, however, for fear that defendant might reach for a weapon while he was doing so.

As the agent pulled defendant from the car, defendant began twisting and turning to avoid being searched and handcuffed. The second agent approached to lend assistance, but defendant would not be subdued. At one point, he spun around, pushed one of the agents away, and shouted to a gathering crowd, "Black Brothers, help me. Don't let these white men take me back to South Carolina." A large group of black youths advanced to within an arm's length of the agents, one of whom then drew his service revolver, identified himself, and held out his credentials to the crowd. Although some of the group confirmed the agents' identity, defendant nevertheless continued to struggle and shout, "Don't believe them. They are not FBI agents." It was not until additional agents and the local police arrived about ten minutes later that the agents were able to complete the handcuffing of defendant and remove him from the area.

The defendant testified at trial that he had left South Carolina while on bail and thus assumed that the agents were bondsmen who wanted to return him to that state. He claimed that his belief was reinforced by the fact that the agent who first approached him had a southern accent and refused to produce his identification when requested to do so. He did admit, however, that his brother had previously told him the FBI was looking for him.

Defendant first contends that the district court erred in refusing to grant a judgment of acquittal on the ground that the Government failed to produce sufficient evidence of forcible conduct. He argues, in effect, that his refusal to submit meekly to the agents does not of itself prove that he acted "forcibly" within the meaning of the statute. We note initially that defendant was charged in one count with all six acts proscribed by 18 U.S.C. § 111, and the Government tacitly concedes that the word "forcibly" modifies each of them. *See* Long v. United States, 199 F.2d 717, 719 (4th Cir. 1952). Since we do not know which act or acts the jury found defendant to have committed, the conviction may be sustained only if we find sufficient evidence of all of the acts charged. We are satisfied that, when defendant pushed and struggled with the agents and attempted to break away from their grasp, he was guilty of forcible assault and resistance, even though those words require more than mere passive resistance. We also think that, under the circumstances, defendant's attempts to incite an already menacing crowd placed the agents in fear of danger and would justify a finding of forcible intimidation. While the remaining words in the statute—"opposes," "impedes," and "interferes"—appear to have been intended primarily to apply to acts by third persons who are not involved in resisting their own arrest, we believe there was sufficient evidence to justify a jury in finding that defendant forcibly committed each of those three acts against the agents making the arrest. *See* Note, "Types of Activity Encompassed by the Offense of Obstructing a Public Officer," 108 U.Pa.L.Rev. 388 (1960).

Defendant next argues that, even if the evidence was sufficient to go to the jury, the district court erred in failing to give the jury an adequate definition of the statutory requirement of "forcible" conduct. We agree that the instruction could have been more elaborate, but we cannot find that it was so lacking in substance as to amount to error.

Defendant's third contention is that the district court committed reversible error by refusing to charge that the Government was required to prove scienter, i. e., knowledge that the agents were federal officers, as an essential element of the offense.[2] We agree with the current view of the Second, Fourth, Fifth, Eighth, and Ninth Circuits that the Government's failure to prove such knowledge does not provide an absolute defense to a Section 111 violation. *See, e. g.*, United States v. Ulan, 421 F.2d 787 (2d Cir. 1970); United States v. McGough, 410 F.2d 458 (4th Cir. 1969); United States v. Marcello, 423 F.2d 993, 1010 (5th Cir.), cert. denied, 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970); United States v. Leach, 429 F.2d 956, 959 (8th Cir. 1970); United States v. Kartman, 417 F.2d 893 (9th Cir. 1969). The statute itself contains no words which would indicate that a person who commits one of the proscribed acts must do so with knowledge that his victim is a federal officer engaged in the performance of his official duties, and what little legislative history does exist indicates only that Congress intended to create a federal forum for the enumerated offenses instead of having to rely upon state and local courts for the protection of federal officers. Ladner v. United States, 358 U.S. 169, 174 n. 3, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) (Letter from Attorney General Cummings to Senator Ashurst, Jan. 3, 1934); *see* United States v. Lombardozzi, 335 F.2d 414 (2d Cir.), cert. denied, 379 U.S. 914, 85 S.Ct. 261, 13 L.Ed.2d 185 (1964); United States v. Kartman, *supra*, 417 F.2d at 895.

Primarily in dictum, a few courts have implied that there may be a distinction between those acts in Section 111 which would be crimes regardless of the person against whom they are committed, such as assault, and those which derive their criminality solely from the fact that they are committed against a law enforcement officer, such as resisting arrest.[3] These courts have suggested that perhaps scienter should be an essential element of the latter but not of the former. Not only has the Supreme Court —albeit in another context—found no indication that Congress intended to treat assault differently from the other activi-

2. The trial judge denied defendant's request for instructions that "it is essential to show that the accused person knew of the identity of the government official as such in order for him to be guilty of wilfully violating the statute," and that the statute "does not proscribe reasonable force employed in a justifiable belief that it is asserted in self-defense." Instead, the court charged that "the only question" was whether defendant in fact committed the alleged acts against federal agents engaged in the performance of their official duties.

3. This distinction is dictum in the following cases: United States v. McKenzie, 409 F.2d 983, 986 (2d Cir. 1969); Burke v. United States, 400 F.2d 866, 868 (5th Cir. 1968), cert. denied, 395 U.S. 919, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969); United States v. Wallace, 368 F.2d 537, 538 (4th Cir. 1966), cert. denied, 386 U.S. 976, 87 S.Ct. 1169, 18 L.Ed.2d 136 (1967).

In United States v. Ulan, 421 F.2d 787 (2d Cir. 1970), the Second Circuit expressly rejected its prior dictum in McKenzie. In United States v. Marcello, 423 F.2d 993 (5th Cir.), cert. denied, 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970), the Fifth Circuit impliedly rejected its dictum in *Burke* by holding that the Government was not required to prove scienter in a case involving both assault and intimidation.

To our knowledge, the only decision to be based upon this distinction is United States v. Rybicki, 403 F.2d 599 (6th Cir. 1968), which involved a charge of intimidating revenue agents by force or threats of force in violation of 26 U.S.C. § 7212(a).

ties grouped together in Section 111 (Ladner v. United States, *supra,* 358 U.S. at 176 & n. 4, 79 S.Ct. 209), but such a distinction would be nearly impossible to apply since, as here, most cases of resisting arrest also involve an assault. We therefore conclude that scienter is not required either in the indictment or the proof to sustain a conviction under any portion of Section 111. The refusal of the district court to give the requested charge was not error.

■ In holding that specific knowledge of the victim's status as a federal officer is not an essential element of the crimes enumerated in Section 111, we do not mean to indicate that a defendant is precluded from showing that his use of force was defensible and justified. Since the statute does not encompass those types of "public welfare offenses" which have abolished the requirement of mens rea,[4] a mistake of fact which negates the existence of the necessary criminal intent will constitute a defense. Thus, a defendant may cast a reasonable doubt upon the existence of mens rea by showing that, under the circumstances, he reasonably believed the facts to be other than they were and that his actions would have been innocent had his belief been correct. In order to sustain its overall burden of proof, the Government must, of course, remove this doubt by offering rebuttal evidence to disprove the mistake. *See* United States v. Ulan, *supra,* 421 F.2d at 790; United States v. Kartman, *supra,* 417 F.2d at 895 & n. 5; 1 R. Anderson, Wharton's Criminal Law & Procedure § 157, at 381–82 (1957) [hereinafter cited as *Wharton*]; Keedy, "Ignorance and Mistake in the Criminal Law," 22 Harv.L.Rev. 75, 82–86 (1908).

Any distinction between those acts which would be criminal regardless of the victim's identity and those which would not is nothing more than the recognition that a mistake of fact may negate the existence of mens rea in some situations and not in others. One who commits an unprovoked assault, for example, cannot claim he lacked criminal intent simply because he did not know that his victim was a law enforcement officer. *See* United States v. Lombardozzi, *supra.* If he acts in resistance to an arrest, on the other hand, he may justifiably use reasonable force in self-defense if he neither knows nor should know that he is being arrested and reasonably believes that he is being subjected to a hostile attack against his person. United States v. Heliczer, 373 F.2d 241, 248 (2d Cir.), cert. denied, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967); 1 Wharton § 157, at 383.

■ Since the defendant in the present case did assert a mistake of fact defense, we would ordinarily find error in the district court's refusal to charge that the jury must acquit if it found that defendant used "reasonable force * * * in a justifiable belief that it [was] asserted in self-defense." Here, however, defendant claimed that his actions were based upon the belief that the FBI agents were really bail bondsmen. Even assuming that such a belief was reasonable under the circumstances, it would not serve to negate the existence of mens rea. A bondsman has the right to pursue his principal into a state other than the one where the bond was executed and arrest him for the purpose of returning him to the state from which he fled. Taylor v. Taintor, 83 U.S. (16 Wall.) 366, 371, 21 L.Ed. 287 (1872); Fitzpatrick v. Williams, 46 F.2d 40 (5th Cir. 1931). And it is criminal both at common law and under the Pennsylvania Code to forcibly assault, resist, or in any other way obstruct any person who is making an arrest authorized by law. *See* Pa.Stat.Ann. tit. 18, § 4314; 3 Wharton § 1283. Thus, under the circumstances of this case, defendant's acts would not have been innocent even if the facts had been as he

---

4. *See, e. g.,* United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); *cf.* Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

allegedly believed them to be, and the district court's refusal to permit the jury to consider a mistake of fact defense was not error. *See* Keedy, *supra* at 83. Indeed, we have held that where the record does not support a party's claim of self-defense, the submission of this issue to the jury is cause for reversal. Smith v. Lauritzen, 356 F.2d 171, 176 (3d Cir. 1966).

■ Defendant argues alternatively that even if Section 111 does not require proof of scienter as an essential element of the offense, the Government voluntarily assumed the burden of proving such knowledge by charging in the indictment that defendant knew the identity of the agents at the time he committed the acts in question. He claims prejudice from the fact that, in reliance on the indictment and the Government's introduction of evidence which tended to show scienter, he based his defense on the rebuttal of such evidence. We agree with the Ninth Circuit that an allegation of scienter in an indictment brought under Section 111 is surplusage. United States v. Kartman, *supra*, 417 F.2d at 894. The fact that the Government purported to impose a higher burden on itself than the law requires was not prejudicial of itself, and we do not think the Government's introduction of testimony that defendant knew the agents' identity was so misleading as to prejudice the defendant. As previously noted, a defense of mistake of fact is always available in a Section 111 prosecution arising out of an arrest. In offering evidence of such a "mistake," defendant was not prejudiced simply because he erroneously believed that he was rebutting an essential element of the Government's proof.

Finally, defendant argues that on the entire record justice requires that a new trial be granted. His point essentially is that during the trial the court indicated that it was a close case, yet the court expressed no such doubt in its opinion denying a new trial. We think the evidence warranted the submission of the case to the jury, and that there was sufficient evidence to support the verdict.

The judgment of the district court will be affirmed.