**UNITED STATES of America, Appellee,**

**v.**

**Hubert H. WILLIAMS, Jr., Appellant.**

**No. 77–1657.**

United States Court of Appeals,
Fourth Circuit.

Argued March 9, 1979.
Decided July 25, 1979.

Dwight F. Drake, Columbia, S. C., for appellant.

Thomas P. Simpson, Asst. U. S. Atty., Columbia, S. C. (Thomas E. Lydon, Jr., U. S. Atty., Columbia, S. C., on brief), for appellee.

Before WIDENER and PHILLIPS, Circuit Judges, and DUMBAULD,* Senior District Judge.

* United States District Court, Western District of Pennsylvania, sitting by designation.

1. 18 U.S.C. § 111 provides in pertinent part:
"Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5000 or imprisoned not more than three years, or both."

WIDENER, Circuit Judge:

The defendant, Hubert H. Williams, Jr., was convicted by a jury of assaulting a Deputy United States Marshal in violation of 18 U.S.C. § 111.[1] At trial, the defendant sought a jury instruction that knowledge that the victim was a federal officer is a necessary element of the offense without which he might not be convicted. The district court denied the defendant's request, and instead charged the jury that knowledge was irrelevant for a conviction under 18 U.S.C. § 111. The defendant appeals, charging that the district court erred in its charge that knowledge of the victim's identity was irrelevant. We affirm.

The defendant was being sought by the United States Marshal in Columbia, South Carolina, who was attempting to serve a civil summons and complaint upon him.[2] Numerous unsuccessful attempts had been made to serve the papers on the defendant. On Saturday, December 4, 1976, Deputy Marshal Walen L. Lamb sought to serve the defendant by going to the defendant's home in Columbia. Although he had previously heard noises in the house, Lamb received no response upon approaching the house and identifying himself. Lamb then went to the home of the defendant's parents, where he learned that the defendant worked out of the state during the week and that he was only in Columbia on weekends. Lamb also learned that the defendant would be flying out of Columbia the following day.

Lamb next went back to the defendant's home, only to learn that the defendant was still not at home. Local police officers came to the home, however, answering a prowler complaint filed by the defendant's

18 U.S.C. § 1114 provides in part that any such person may be:
". . . any United States marshal or deputy marshal or person employed to assist such marshal or deputy marshal, . . ."

2. The defendant along with his father, Hubert H. Williams, Sr., were being sued civilly by the Small Business Administration. Both complaints and summons were issued on October 15, 1976. Hubert Williams, Sr., was served in October.

wife. Lamb identified himself to the police officers and explained his purpose for being there. The city officers then attempted'to get someone to come out of the house to speak with the deputy marshal but no one would.

The next day, December 5, 1976, the defendant learned from his wife of the events that transpired the previous evening. As a result, the defendant sent a telegram to the U. S. Marshal advising him to stop being belligerent to his parents and his family. Shortly thereafter, the defendant proceeded to the Columbia airport to catch his flight out of town.

That same day, Deputy Marshal Lamb proceeded to the Columbia airport to again attempt to serve the defendant. Lamb, who had never seen the defendant before, made arrangements with the ticket agent, who was to advise him when the defendant approached the ticket counter to be checked into his flight. Two men soon approached the ticket counter. Lamb misread the agent's signal and approached the latter of the two men. Upon learning from that man that he had approached the wrong man, Lamb then proceeded in the direction of the defendant who by this time was walking in the opposite direction toward the flight gates. Lamb had the civil papers in one hand and his credentials in the other. Approaching the defendant from the rear, Lamb tapped the defendant on the right shoulder with the papers. The defendant then spun around and struck the officer in the chest. A local police officer, after seeing the incident, assisted Lamb in arresting the defendant.

At trial the defendant testified that the officer spun him around, causing him to lose his balance, and that he fell into the officer. He denied striking the deputy marshal. He also testified that the deputy marshal did not identify himself and did not have his credentials in hand.

At the end of the prosecution's proof, the defendant moved for acquittal on the ground that the prosecution had not proven all the essential elements of the crime because it had not proven that the defendant knew that the individual he struck was a deputy marshal. The court denied the defendant's motion. The case was submitted to the jury under the instruction that knowledge of the victim's identity was irrelevant. The defendant objected to this charge on the ground that knowledge is an element of the offense. The defendant requested no additional charges. A verdict of guilty was returned by the jury. The defendant argues that knowledge as to the identity of the victim is an essential element of the offense and therefore must be proven by the prosecution. We disagree.

As a general rule, knowledge as to the identity of the victim is unnecessary for a conviction under 18 U.S.C. § 111. *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1974). In certain circumstances, however, knowledge may be a relevant consideration if it goes to disproving the necessary element of mens rea. The Court in *Feola* stated:

> "We are not to be understood as implying that the defendant's state of mind is never a relevant consideration under § 111. The statute does require a criminal intent and there may well be circumstances in which ignorance of the official status of the person assaulted or resisted negates the very existence of mens rea. For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might reasonably be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent."

420 U.S. at 686, 95 S.Ct. at 1264.[3]

18 U.S.C. § 111 was not enacted only as a counterpart to state laws requiring increased punishment for assaulting a

---

**3.** See also the pre-*Feola* cases of *United States v. Perkins,* 488 F.2d 652, 654–55 (1st Cir. 1973); *United States v. Goodwin,* 440 F.2d 1152, 1156 (3d Cir. 1971); and *United States v. Ulan,* 421 F.2d 787, 789–90 (2d Cir. 1970).

peace officer where a defendant must know that his victim is an officer. Instead § 111 was also designed to provide a federal forum for the trial of offenses involving federal officers. Requiring knowledge as an element of the crime, for example, would provide no protection for federal agents acting under cover. This offense was designed to protect both the federal officer and the law enforcement activities in which he is involved.[4]

In the instant case, had the evidence and his theory of the case suggested it, the defendant upon request might well have been entitled to a jury instruction relating to the exception set forth in *Feola*. But no such theory of defense was pursued; instead, the defendant took the untenable position that knowledge is an element of the offense in each instance and therefore no request need be made.

The charge urged by the government and given by the district court was too broad upon the theory of the case now urged by the defendant in that it stated that knowledge was irrelevant. The defendant's suggested charge is equally too extreme on that theory in that he contended that knowledge as to the identity of the victim is an element of the offense and the absence of it should require acquittal.

■ The correct interpretation lies between these two extremes. Knowledge may in certain circumstances be relevant if it relates to the existence of the necessary mens rea to justify a criminal conviction. If the defendant felt that the circumstances here brought this exception into play, he could have urged that defense, but he did not.·

Unlikely as it may seem in view of the record in this case, the jury could have believed from the defendant's acts (as described by the marshal), in contrast to the defendant's testimony, that the officer failed to identify himself and that the officer used unlawful force on the defendant, which force the defendant instinctively or justifiably resisted.[5] Therefore, had the case been tried on that theory, an instruction would have been proper taken from the above quoted language from *Feola*. But the defendant did not choose that as an alternate theory of defense. Rather, he chose to defend the case on the theory that the entire occurrence was an accident and that he did not strike the officer at all. This was also a perfectly tenable theory from the testimony of the defendant.

■ While we do not hold or suggest that a criminal defendant may not adopt alternative defenses, even inconsistent ones, this defendant did not. He chose to try the case on the basis that his interference with the officer was accidental and that he did not strike the officer. We think the defense from *Feola,* that the defendant might reasonably be justified in asserting an element of resistance to an unlawful use of force directed at himself or his property, or that he had committed an honest mistake of fact in striking an officer, is in the nature of an affirmative defense which must be asserted in some manner at some point during the trial. Here, the defendant did argue the *Feola* exception, as it applies under a theory of self-defense, during his motion for acquittal outside the presence of the jury. This argument, however, was at the close of the government's evidence, when there was no evidence in the case to indicate mistake or self-defense. The defendant, moreover, never presented any testimony to support such a defense to the jury, but, in fact, based his entire defense upon the notion that the incident was an accident.

■ Thus, on the theory of the case adopted by the defendant, that the whole affair was accidental, the instruction of the

---

4. For a discussion of the legislative history of 18 U.S.C. § 111, see *United States v. Feola,* 420 U.S. 671, 677–84, 95 S.Ct. 1255, 43 L.Ed.2d 541.

5. In his testimony, the defendant denied striking the officer. Instead, he testified that the whole incident was an accident resulting from his losing his balance and falling into the officer. The defendant's mother also testified that she did not see her son strike the officer, as did two other witnesses called by the defendant. The inference sought to be drawn, of course, was that Williams did not strike the marshal.

district court is not erroneous for it complies with the holding in *Feola* that knowledge of the identity of the officer is irrelevant.[6]

To give the defendant the benefit of the doubt, we consider that he argues on appeal that a trial court should give a charge, based on the earlier quoted language from *Feola,* in any case and that failure to do so is plain error. We do not agree. We do not believe it is plain error for a trial court to fail to instruct a jury on an optional defense when the testimony of the defendant himself is inconsistent with the defense offered. We have taken into account the testimony of the defendant that he did not strike the officer and the fact that he chose not to raise this theory of defense at trial. FRCrP 30, 52(b). See *Kotteakos v. United States,* 328 U.S. 750, 758–766, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

While the trial court is under a duty to instruct the jury on all of the elements of an offense in a criminal trial,[7] it is certainly not required to instruct the jury on a defense the theory of which is not even supported by the testimony of the defendant adduced at trial. Wright & Miller, 2 *Fed. Prac. & Proc.* § 485 (1969); *United States v. Garner,* 529 F.2d 962 (6th Cir. 1976). See also *United States v. Swallow,* 511 F.2d 514 (10th Cir. 1975).

Accordingly, the judgment of the district court is affirmed.[8]

*AFFIRMED.*

---

6. We had held prior to *Feola,* in *United States v. Wallace,* 368 F.2d 537 (4th Cir. 1966), that knowledge was not an essential element of the crime.

7. *United States v. Harris,* 346 F.2d 182 (4th Cir. 1965).

8. Because the testimony of the defendant in *United States v. Young,* 464 F.2d 160 (5th Cir. 1972), was consistent with mistake, we do not think that case, holding it plain error to omit a knowledge instruction, is inconsistent with our holding. So far as the two cases may be read as inconsistent, however, with respect, we simply disagree.