**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 9, 2006
Decided September 6, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

No. 05-3614

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division |
| v. | No. 1:03 CR 85 |
| SERGIO ARCURI, *Defendant-Appellant*. | James T. Moody, *Judge* |

**ORDER**

Sergio Arcuri was convicted after a jury trial of two counts of assaulting a federal officer. *See* 18 U.S.C. § 111(a). He appeals his convictions on the ground that the government failed to prove that he knew his victims were federal officers. The jury rejected his claim of self defense based upon his lack of knowledge of his victims' official status. We affirm Arcuri's convictions.

On the afternoon of September 5, 2003, two deputy United States marshals, John Bridge and John Seagreaves, attempted to execute an arrest warrant on Arcuri for violating the terms of his federal supervised release. Deputy Bridge recounted for the jury that, while en route to an interview in an unrelated

investigation, he and Seagreaves received a tip that Arcuri was at a home on Governors Street in South Haven, Indiana. Wearing street clothes and driving an unmarked minivan with dark tinted windows, the deputies proceeded to Arcuri's location. As they approached the residence, they observed a man that matched Arcuri's physical description walking across the front lawn with a young woman. The deputies parked the van a short distance away and watched Arcuri and the woman get into a parked car. Arcuri entered the vehicle on the driver's side, and the woman, on the passenger's. The deputies exited their van and approached the car on foot. As Seagreaves positioned himself toward the front of the car, Bridge walked toward the rear, displayed his badge, and identified himself as "Police." He heard the car's engine start, and as he came to a stop behind the vehicle, Arcuri backed up. Bridge tried to move and pounded on the trunk to let Arcuri know he was there, but the car nevertheless struck him in both legs. Bridge then saw the woman in the passenger's seat put the car in "park," which allowed him to move out from behind the car. From his new vantage point on the driver's side of the vehicle, Bridge watched the car move forward, accelerate, and strike Seagreaves before it sped away. He also heard a gunshot but did not know where it came from. Bridge then looked toward Seagreaves to confirm that he was not seriously injured and saw Seagreaves picking up his credentials from the ground. The deputies returned to the minivan, called local police, and attempted to follow Arcuri but failed to catch up with him.

Deputy Seagreaves corroborated Deputy Bridge's testimony, recalling that he and Bridge identified themselves as "police" to the occupants of the vehicle several times before Arcuri struck them with the car. In particular, Seagreaves testified that as he approached the car he uncovered his gun, which he carried in a waistband holster, and said he made sure that his pocket badge was visible. Once he arrived at Arcuri's vehicle, Seagreaves said, he displayed his photo identification and badge up against the driver's side window and shouted in a voice loud enough to be heard through the closed window: "Police. Let me see your hands." He repeated the command once or twice and saw Arcuri focus his eyes on him, then in a downward fashion toward his credentials, then Arcuri's eyes returned to his face. Arcuri then started the car, and Seagreaves moved toward the front of the vehicle, drew his gun, yelled "Police," and ordered Arcuri to "stop, turn off the vehicle, let me see your hands." Arcuri put the car in reverse and struck Bridge. Arcuri next turned the car toward Seagreaves, accelerated forward, and struck him. Because he was of the belief that Arcuri was trying to run him over and endanger his life, Seagreaves fired a shot into the car toward Arcuri and "pushed off" the hood of the car before it sped away.

The government also presented evidence that Arcuri admitted using the car to assault Deputies Bridge and Seagreaves. Specifically, Deputy John Ambrose, who later apprehended Arcuri, testified that, when he told Arcuri he was under

arrest for assaulting a federal officer, Arcuri responded that he "didn't try to run over the deputy, but he used his car to push him out of the way because he was going to do whatever was necessary for him not to go back to jail." And Deputy John Jaehnig testified that Arcuri told him that, although he did not intend to hurt Deputies Bridge and Seagreaves, he knew they were police and did not want to go back to jail.

Witnesses testifying for Arcuri offered a somewhat different account of events. Nicole Williams, Arcuri's female passenger, testified that two men ran up to their car after she and Arcuri got in. The man who approached the driver's side ordered Arcuri out of the vehicle. Williams said he did not verbally identify himself or display a badge or other identification, but she conceded that she had thought he was a police officer because he had a gun. Instead of complying with the officer's command, Arcuri told Williams they had to leave, started the car, and backed up a couple inches. Williams yelled at Arcuri to stop, returned the car to "park" herself, and asked Arcuri what was going on. As Arcuri pushed her back into her seat, she heard a gunshot and the "driver's side window blew up." The car was not moving at that time, but after the shot Arcuri drove off. When he next stopped the car a couple of blocks away, Williams got out because she was scared. But, she insisted, Arcuri never struck anyone with the car. In addition, Kristi Arcuri, the defendant's cousin, testified that she was outside when she saw two men walk up to Arcuri and Williams after they got in the car. The men "looked like normal people" and were not displaying badges or guns. But once the men arrived at the car, she heard them say: "Sergio, don't even do it. We will shoot you." She then heard a gunshot, ran into the house, and "called the cops on them, because we didn't know that they were cops." Similarly, Courtney Arcuri testified that when she was inside the house she heard someone yell, "I'm going to shoot you." She then stepped outside and saw a man standing near the driver's door of the car. She did not see a badge but heard a gunshot and ran back into the house.

On appeal Arcuri argues that the government's evidence was insufficient to sustain his assault convictions. He points to language in Jury Instruction No. 18, which provides in relevant part, "the defendant would not be guilty if the evidence leaves you with a reasonable doubt concerning whether the defendant knew the victim to be a federal officer," and contends that the government was required to prove that he knew that the men he assaulted were federal officers. Because his eyewitnesses testified that they did not see or hear Deputies Bridge or Seagreaves identify themselves as officers, Arcuri contends, the government failed to prove its case.

It is well-established that the government need not prove the defendant knew his intended victim was a federal officer as an essential element of § 111. *United States v. Feola*, 420 U.S. 617, 684 (1975); *United States v. Woody*, 55 F.3d 1257,

1266 (7th Cir. 1995); *United States v. Bunch*, 730 F.2d 517, 520 (7th Cir. 1984); *United States v. Nerone*, 563 F.2d 836, 850 (7th Cir. 1977); *United States v. Moore*, 997 F.2d 30, 35 n.8 (5th Cir. 1993); *United States v. Spears*, 631 F.2d 114, 117 n.5 (9th Cir. 1980); *United States v. Williams*, 604 F.2d 277, 279 (4th Cir. 1979). When self defense is at issue, however, knowledge of the victim's official status may become important because the requisite mens rea for conviction under § 111 may be negated by showing that the defendant honestly thought he was being confronted by a private citizen. *United States v. Hillsman*, 522 F.2d 454, 460 (7th Cir. 1975). Thus to refute Arcuri's claim of self-defense the government was required to prove he knew his assault victims were law-enforcement officers. *See United States v. Johnson*, 605 F.2d 1025, 1031 (7th Cir. 1979); *see also United States v. Milk*, 447 F.3d 593, 598 (8th Cir. 2006); *United States v. Pierre*, 254 F.3d 872, 876 (9th Cir. 2001).

The government presented more than sufficient evidence for the jury to conclude that Arcuri knew of Deputies Bridge's and Seagreaves's official status when he struck them with his car. Both Bridge and Seagreaves testified that they displayed their deputy-marshal badges and identified themselves as "police" as they approached Arcuri's vehicle. That was proof enough and was believed by the jury. Moreover, Arcuri was wanted for violating the terms of his supervised release, and his post-arrest confession that he never intended to injure the two deputies but had tried "to do whatever was necessary for him not to go back to jail" allowed the jury to conclude that Arcuri knew Bridge and Seagreaves were there to arrest him. Although Arcuri maintains that he did not intentionally assault Bridge and Seagreaves because he honestly believed that he was going to be shot by a stranger and presented evidence on his own to support his theory, it is obvious that the jury rejected Arcuri's defense and accepted the government's version of events. *See United States v. Swanquist*, 161 F.3d 1604, 1071 (7th Cir. 1998) (instructing that this court must defer to the jury's reasonable inferences and to the weight it gave the evidence).

AFFIRMED.