NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0479n.06

No. 22-1815

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 17, 2023
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| MICHAEL MILLS, | ) | |
|     Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: CLAY, KETHLEDGE, and MATHIS, Circuit Judges.

**CLAY, Circuit Judge**. Defendant Michael Mills appeals his conviction and statutory maximum sentence of 120 months' imprisonment for one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). Mills argues that the district court abused its discretion by admitting evidence that suggested he had gang affiliations and that the district court erred at sentencing when it applied the cross-reference in U.S.S.G. § 2K2.1(c). For the reasons set forth below, the Court **AFFIRMS** Mills' conviction, **VACATES** his sentence, and **REMANDS** the case for resentencing and further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

Certain members of Defendant Michael Mills' family had ties to the Detroit street gang, "It's Just Us," also known as "IJU." Although Mills lacked membership status in IJU, his brother, Darius Brown, and his cousin, Melvin Brown, were both members. In spring 2018, the IJU gang allegedly killed Mills' brother for cooperating with law enforcement, leaving both him and his

family distraught and traumatized. Toward the end of August 2018, Mills moved in with his cousin on Detroit's East Side. As part of this move, Mills also brought three guns to his cousin's house purportedly to sell on Facebook. It should be noted that Mills' criminal history prohibited him from legally possessing a firearm or ammunition.

On August 31, 2018, Mills noticed two cars driven by IJU members near his cousin's home, and he called his cousin to warn him of their proximity. Looking for answers as to their relative's disappearance, Mills' cousin, armed with a 9mm handgun, approached the IJU cars and climbed into the backseat of one of the vehicles. Shortly after entering the car, gunshots rang through the neighborhood. Although the motivation for Mills' subsequent actions is disputed, Mills sprang to action and sprinted outside to his cousin with a loaded pistol grip shotgun. Shots fired back and forth, and the gunfire ended with the death of an IJU member, James Matthews, Jr., in the front passenger seat of one of the vehicles. Matthews died from a shotgun shell lodged in his right shoulder. Both Mills and his cousin fled the scene.

On October 11, 2018, FBI agents located and arrested Mills in connection with the events of August 31, 2018. Mills waived his *Miranda* rights and agreed to participate in an interview. During this interview, Mills admitted that he possessed a pistol grip shotgun and that he fired two rounds from the shotgun in the direction of the cars on August 31, 2018. In addition, Mills described in detail the manner in which he loaded the ammunition into the shotgun. In a second interview the next day, Mills admitted to knowing the shotgun was loaded with ammunition when he fired it. Mills was subsequently charged with violating 18 U.S.C. § 922(g), which prohibits felons from possessing ammunition.

2

**B. Mills' Pre-Trial Motions and Jury Trial**

Prior to Mills' jury trial, the parties litigated several motions in limine, including a "Motion in Limine Pursuant to FRE 401, 403" (the "Motion"). The Motion requested that the court enter an order pursuant to Rules 401 and 403 excluding evidence concerning the death of Matthews and any alleged gang involvement by Mills. Because the elements of § 922(g)(1) do not require the government to show that a death occurred, the district court agreed to exclude references to the eventual death of Matthews. Additionally, the district court agreed that the Defendant's alleged gang affiliation should be excluded from evidence, as Mills' charge did not require a showing of enterprise membership.

During an evidentiary hearing before the commencement of trial, the government introduced several clips of Mills' confession video to show the voluntariness and validity of Mills' statement to police regarding the shooting. These clips showed the detectives informing Mills of his *Miranda* rights and snippets of the subsequent interview that occurred, during which Mills admitted to shooting a shotgun twice. Mills' counsel took issue with the video's depiction of one detective's shirt, emblazoned with the words "Gang Intel," which is briefly visible at certain points. Additionally, the detective introduced himself at the beginning of the video as a member of the Detroit Gang Intelligence Unit. Although the court ruled that the detective's introduction should be omitted from the version the jury would eventually see during trial, the court held that the shirt was inextricable from the video and that the words written on the shirt were largely illegible.

On appeal, although Defendant does not meaningfully challenge the use of these video clips during trial, Defendant argues that, because the court permitted the jury to take these clips into deliberation with them, the jury could have paused on clips in which the "Gang Intel" shirt was clearly visible. Additionally, Defendant contends that the introductions were not cut from the

3

version the jury ultimately reviewed. Therefore, he argues that the jury's unfettered viewing of this video during deliberations contradicted the court's order and ultimately biased the jury.

In addition to the above-mentioned video clips—in which Mills admits to shooting the shotgun at least twice—the government called three eyewitnesses, each of whom testified that they saw Mills (or an individual who looked like Mills) with a shotgun.[1] Specifically, Mills' cousin, Melvin Brown, stated that Mills fired a shotgun in the direction of the IJU members' cars, and that he believed Mills saved his life by doing so. Melvin Brown also testified that Mills brought three guns and shotgun ammunition with him to the apartment when he moved there in August 2018.

During deliberations, the jury posed several questions regarding the Defendant's interview video in which he admitted to possessing a shotgun and ammunition. For example, the jury questioned whether they could have a full video to view, rather than video clips, and whether prescription drugs were administered to the Defendant before the interview. On April 6, 2022, the jury unanimously agreed that Mills was guilty of being a felon in possession of ammunition.

### C. Mills' Sentencing

Prior to sentencing, the probation department prepared a presentence report, recommending that Mills receive the statutory maximum sentence. Using a second-degree murder cross-reference to calculate the base offense, the presentence report provided that the resulting Guidelines range was 292 to 365 months' imprisonment. Recognizing that the maximum term of

---

[1] One eyewitness testified that she heard gunshots and that she saw someone "creeping . . . up by a vehicle." Jury Trial Vol. II, R. 145, Page ID #851. She did not see that individual holding a shotgun, and, when the gunshots ensued, she ducked to the floor immediately and did not recall anything further. The other eyewitness could not confidently identify the Defendant. She testified that she remembered "a light-skinned dude with dreads" outside of her window, holding a smoking "long gun." Jury Trial Vol. II, R. 145, Page ID #884–85.

imprisonment under 18 U.S.C. § 922(g) is ten years, the presentence report concluded by recommending the full 120 months' imprisonment, which reflected the probation department's finding that "the most analogous offense guideline" to cross-reference was second-degree murder. In contrast, a finding that the most analogous offense guideline was involuntary manslaughter would have resulted in a range of 33 to 41 months, and a finding that the most analogous offense guideline was voluntary manslaughter would have resulted in a range of 108 to 135 months.

In response to the presentence report, Mills filed two objections.[2] As relevant to this appeal, Mills contended that the facts of the case did not support the cross-reference to second-degree murder. Mills noted the probation department failed to present evidence that he possessed the *mens rea* required to prove second-degree murder. Instead of proving that Mills premeditated the shooting or acted with malice aforethought, Mills contended that the testimony clearly illustrated that he only shot *after* the IJU gang members initiated a shootout and that his actions saved the life of his cousin. The probation department merely replied to this objection by stating that "the guideline[s] have been accurately calculated" and that "this matter will be left to the [c]ourt to decide." Addendum to PSR, R. 171, Page ID #1604–05.

At the sentencing hearing, the parties heavily contested the cross-reference to second-degree murder. Mirroring his objections to the presentence report, Mills argued that the government did not present evidence regarding which of the "six men opening fire" ultimately killed Matthews and that Mills did not possess the requisite *mens rea* to commit second-degree murder. Tr. Sent'g Hr'g, R. 182, Page ID #1679–81. Mills highlighted that the court must

---

[2] Mills also objected to the presentence report's failure to credit him for his acceptance of responsibility, but he does not appeal on these grounds.

*specifically find* that Mills possessed the intent to kill in order to apply the second-degree murder cross-reference.

After hearing argument from both sides, the district court stated that the evidence presented "indicates by at least a preponderance . . . that the conduct of the defendant caused the death of someone at the scene and that he was in possession of ammunition." Tr. Sent'g Hr'g, R. 182, Page ID #1685–86. Accordingly, the court adopted the presentence report as written and agreed that the application of the second-degree murder cross-reference was warranted. The court allowed both Mills and his attorney to present mitigating circumstances and statements on his behalf.

At the end of the hearing, when fashioning a sentence, the court applied the requisite factors under 18 U.S.C. § 3553(a), including a discussion of Mills' prior criminal history, the serious nature of the surrounding offense, the importance of deterrence, and the importance of protecting the public. Based on these reasons and Mills' Guidelines range, calculated using the second-degree murder cross-reference, the district court imposed the statutory maximum of 120 months. This timely appeal followed.

## II. DISCUSSION

### A. Admission of Interview Videos

This Court reviews a district court's evidentiary rulings for an abuse of discretion. *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007). While the district court's conclusions of law are reviewed *de novo*, its factual determinations underpinning its legal conclusions are reviewed for clear error. *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 584 (6th Cir. 2015). If the Court finds that the district court abused its discretion in admitting a certain piece of evidence, such error may only be reversed if it affects a party's substantial rights or if justice so requires. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir. 1998).

On appeal, Mills contends that the district court abused its discretion in admitting the confession video because its prejudicial impact substantially outweighed any probative value, which violated Rule 403 of the Federal Rules of Evidence. When objecting to the video during a pre-trial hearing, Mills' counsel noted the prejudice that could result from the jury seeing one of the detectives wearing a "Gang Intel" shirt and hearing the detective introduce himself as part of the Gang Intelligence Unit. Mills' counsel argued that admitting this video would contradict the district court's earlier order, which "preclude[d] evidence of his alleged gang involvement." Order Granting Mot. in Lim., R. 133, Page ID #692.

In evaluating the potential prejudice that the video posed, the court agreed that the portion of the video in which the detectives introduce themselves as members of the Gang Intelligence Unit should be cut from the version the jurors would see. However, the court stated that it could not control the "Gang Intel" t-shirt the interviewer wore any more than it could change the "Michigan State" hat that the other officer wore. Further, the text of the shirt was blurry and, for the vast majority of the video, completely out of sight. Overall, the district court concluded that the potential prejudice due to a quick glimpse of the word "gang" on a shirt did not substantially outweigh the probative value of Mills' confession to firing the shotgun twice. Although the court offered to instruct the jury to disregard the shirt's text, Defendant's counsel opted against such an instruction.

Mills cannot show that the district court abused its discretion by admitting these video clips without the initial verbal introduction of the detectives as members of the Gang Intelligence Unit. Not only would a juror have to hyper-fixate on the detective's shirt and pause the video several times, but he or she would also have to make multiple inferential leaps. For example, the juror would have to assume that because a detective wears a "Gang Intel" t-shirt, he is a member of the

Gang Intelligence Unit. Even further, the juror would need to assume, simply because an individual is interviewed by a member of the Gang Intelligence Unit, the individual is or was involved in gang-related activities. Finally, the juror would need to assume that *Mills* is the reason for the Gang Intelligence Unit's involvement—rather than one of the other five individuals mentioned in the case. Each of these inferential leaps also rests upon the underlying assumption that a juror can read the shirt within the first sixty seconds of the video clips. Moreover, as the district court properly concluded, the potential prejudice resulting from this brief flash of the phrase "Gang Intel" was negligible.

Even if the district court abused its discretion by admitting the video clips, the introduction of the clips was harmless error. *See, e.g.*, *United States v. Anderson*, 333 F. App'x 17, 24 (6th Cir. 2009). To prove a violation of 18 U.S.C. § 922(g), the government must prove the following elements beyond a reasonable doubt: (1) that Mills has been convicted of a crime punishable by imprisonment for more than one year; (2) that Mills, following his conviction, knowingly possessed the ammunition; (3) that at the time Mills possessed the ammunition, he knew that he was previously convicted of a felony; and (4) that the ammunition crossed state lines prior to the possession. *United States v. McDowell*, 502 F. App'x 558, 560 (6th Cir. 2012) (citing *United States v. Morrison*, 594 F.3d 543, 544 (6th Cir. 2010)). Mills stipulated to elements one and three, and he did not dispute the federal nexus element—that the ammunition crossed state lines.[3]

As for element two, in the video clips, Mills confessed to possessing ammunition and shooting a pistol grip shotgun at least twice. Notably, Mills also gave a second interview the following day, during which he again told the police that he fired the gun knowing it was loaded

---

[3] Of course, Mills disputes that he possessed ammunition at all. However, he offers no evidence that the ammunition found did not cross state lines.

with ammunition. Additionally, Mills' cousin testified that Mills possessed a shotgun and ammunition, and the government entered photos of Mills' three guns into evidence.

For these reasons, Mills has not presented a scenario in which "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *McDowell*, 502 F. App'x at 560 (quoting *United States v. Bell*, 516 F.3d 432, 447 (6th Cir. 2008)). In other words, it is not more probable than not "that the error materially affected the verdict." *United States v. Pugh*, 405 F.3d 390, 401 (6th Cir. 2005) (quoting *United States v. Trujillo*, 376 F.3d 593, 611 (6th Cir. 2004)); *see also United States v. Woodley*, 727 F. App'x 136, 140 (6th Cir. 2018) ("[Defendant] points to no occurrence in the record which would indicate that the limited reference to [his] gang affiliation was unduly prejudicial or unfairly affected the outcome of the case."); *Anderson*, 333 F. App'x at 24 ("Even if the trial court abused its discretion in admitting gang evidence, . . . a defendant is not entitled to reversal of his conviction if admission of the evidence was harmless.").

Despite the district court's order precluding any mention of Mills' alleged gang involvement during trial, the court did not abuse its discretion in admitting video clips in which one of the two interviewing detectives is wearing a "Gang Intel" t-shirt. Even if the admission of the video clips was erroneous, any prejudice to the Defendant did not contribute to his conviction and, therefore, is harmless error.[4] For these reasons, the Court affirms Mills' conviction.

---

[4] Finally, it is worth briefly mentioning that Mills' attorney points to no evidence that could substantiate the serious claims in his reply brief that "the jury was provided a copy of the entire portion of the video during deliberations and that portion does have the detective introduced [sic] himself as a member of the gang unit when walked [sic] into the interview room." Pet'r's Reply Br., ECF No. 35, 2. Upon review of the exhibit that the jury received during its deliberations, the clips do not depict a detective introducing himself as a member of the Gang Intelligence Unit. Additionally, when the jury deliberated, it specifically inquired "why there is a pause slash gap

**B. Sentencing**

This Court reviews the district court's sentencing decisions under a deferential abuse of discretion standard. *United States v. Shannon*, 803 F.3d 778, 787 (6th Cir. 2015). While legal conclusions are reviewed *de novo*, factual conclusions are reviewed for clear error. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). This Court reviews a criminal sentence for both procedural and substantive reasonableness. *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

A sentence is procedurally unreasonable if, for example, the district court failed to calculate the Guidelines range properly, failed to consider the factors delineated in 18 U.S.C. § 3553(a), or failed to adequately explain the sentence. *United States v. Nichols*, 897 F.3d 729, 737 (6th Cir. 2018) (citing *Gall*, 552 U.S. at 51). In this case, Mills argued that the district court incorrectly applied the Sentencing Guidelines, which focuses this Court's inquiry on the procedural reasonableness evaluation. *See United States v. Harris*, 552 F. App'x 432, 443 (6th Cir. 2014) ("Because the district court erred with respect to the cross-reference to second-degree murder, thereby rendering [the defendant's] sentence procedurally unreasonable, we do not reach the question of substantive reasonableness.").

Mills argues that the district court erroneously calculated his Guidelines range when it applied a cross-reference for second-degree murder to determine his base offense level. The district court may consider uncharged conduct or even acquitted conduct that is proven by a

---

between clips two, three, four in the video Exhibit Six," and then asked to view a continuous interview video. Jury Trial Vol. IV, R. 183, Page ID #1771. The court replied, "No. You must only consider that which is on the exhibit," and both parties agreed to this response. *Id.* at Page ID #1773. The evidence in the record clearly indicates the jurors solely saw the limited clips presented during trial.

preponderance of the evidence when sentencing a defendant. *United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (en banc). Therefore, although the government did not bring any homicide-related charge against Mills, the sentencing court may consider whether the government proved related, more severe conduct by a preponderance of the evidence for purposes of calculating Mills' sentence.

In fact, the Sentencing Guidelines for a violation of 18 U.S.C. § 922(g) expressly contemplate that the district court may review a defendant's uncharged conduct, particularly if the possession of a firearm or ammunition resulted in severe or grave consequences. *See* U.S.S.G. § 2K2.1. Under § 2K2.1(c)(1) and (c)(1)(B), if the illegal possession of ammunition resulted in death, the court may apply an enhancement and should cross reference "the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide)." *Id.* § 2K2.1(c)(1)(B). To be clear, the district court did not necessarily err by applying this cross-reference, as a death indisputably occurred. The issue before this Court is whether the district court made sufficient findings to support its selection of second-degree murder as the "most analogous offense guideline." *Id.* It did not.

In selecting the "most analogous offense" under this subsection of the Sentencing Guidelines, the sentencing court must rule on any disputed portion of the presentence report and find specific facts supporting such a ruling by a preponderance of the evidence. Fed. R. Crim. P. 32(i)(3)(B); *Harris*, 552 F. App'x at 440. "[T]he 'court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence.'" *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007) (citations omitted). Instead, the court must "*actually find facts*," meaning, in this case, it must specifically mention and rule upon the elements of the second-degree murder cross-reference that

11

Mills disputed. *Id.* at 416 (emphasis in original); *see also United States v. Solorio*, 337 F.3d 580, 598 (6th Cir. 2003). Mills' presentence report recommended that the district court select second-degree murder as the most analogous offense guideline.

The Guidelines define second-degree murder by referencing 18 U.S.C. § 1111(a), which defines it as "the unlawful killing of a human being with malice aforethought." *United States v. Milton*, 27 F.3d 203, 206 (6th Cir. 1994). During sentencing, Mills' attorney raised three separate concerns with applying the second-degree murder cross-reference in this case: (1) the district court failed to make findings of fact indicating that Mills' ammunition was the actual cause of Matthews' death; (2) the district court failed to make a finding of fact related to his justification defense, and (3) the district court failed to make findings of fact indicating that Mills possessed the requisite mental state of intent to satisfy the definition of second-degree murder.

First, Mills' counsel argued that the court could not find by a preponderance of the evidence that Mills killed the victim because there were six men opening fire and the government presented no evidence as to the type of gun that four of these men were carrying. In response, the court clarified that, "all [the presentence report is] saying here is that the [ammunition] was involved in the death, not that it caused the death, it's just involved in the death."[5] Tr. Sent'g Hr'g, R. 182, Page ID #1680. Nonetheless, without ever finding that Mills killed someone, the district court applied the second-degree murder cross-reference.

---

[5] The district court later doubled down on this interpretation, stating "[t]his is that the ammunition was involved in the second degree murder. Doesn't mean it was the cause of the murder. . . . There [were] a lot of other weapons involved. Guys got out of the car, start[ed] shooting. Everybody that shot was involved." Tr. Sent'g Hr'g, R. 182, Page ID #1681.

Next, Mills' attorney briefly mentioned a justification defense to the cross-reference, stating that "but for Michael, [Melvin Brown] would probably be dead."[6] *Id.* at Page ID #1683. Throughout the entire sentencing hearing, the district court never specifically found that Mills' ammunition caused the death of Matthews, nor did it "[give any] consideration to any of the elements of [a justification defense]." *See Walker*, 858 F. App'x at 861–62 (finding a defendant's sentence procedurally unreasonable where "the district court failed to make actual findings of fact showing that all elements of the manslaughter cross-reference were satisfied, including the absence of any defenses.") (citation and internal quotation marks omitted).

Finally, and most importantly, even though Mills disputed the element of intent prior to and during his sentencing hearing, the district court did not make *any* finding of fact related to Mills' *mens rea* for purposes of applying the cross-reference. Instead, the district court merely found that "the conduct of the defendant caused the death of someone at the scene," which involved a level of generality vague enough to indicate that any type of homicide occurred, including the least severe offense of involuntary manslaughter. Tr. Sent'g Hr'g, R. 182, Page ID #1685. Additionally, the presentence report does not mention Mills' *mens rea* at all, let alone find that he acted with malice aforethought, which the elements of second-degree murder require.

---

[6] The government argues on appeal that the district court considered and rejected this argument at trial. However, merely because the district court rejected a justification instruction for purposes of the *felon-in-possession* trial's jury instructions does not mean it can neglect to address the defense of necessity or justification as applied to second-degree murder. *United States v. Walker*, 858 F. App'x 857, 861 (6th Cir. 2021). After all, a district court is "not required to instruct the jury on a defense" that is not "supported by the testimony of the defendant adduced at trial." *United States v. Plummer*, 789 F.2d 435, 438 (6th Cir. 1986) (quoting *United States v. Williams*, 604 F.2d 277, 281 (4th Cir. 1979)).

Instead of finding specific facts to support each element of second-degree murder—including the absence of any defenses—by a preponderance of the evidence, the district court ruled on Mills' objections by stating:

> I think the preponderance of evidence is clear. I think there's – indicates by at least a preponderance of the evidence that the conduct of the defendant caused the death of someone at the scene and that he was in possession of ammunition for which could be my preponderance of the evidence related to second degree murder. I think it's pretty clear and, therefore, will deny the objection.

*Id.* at Page ID #1685–86. The court did not specifically find that Mills killed Matthews, did not specifically opine on Mills' justification defense, and did not specifically find that Mills did so with malice aforethought. Instead, the district court merely stated that Mills' ammunition and conduct "were involved" in the second-degree murder and neglected to mention Mills' *mens rea* or his justification defense at all. *Id.* at Page ID #1681. "The court cannot just 'summarily adopt the factual findings in the presentence report' over the defendant's objection or simply declare *ipse dixit* that the evidence supports those findings." *Walker*, 858 F. App'x at 861 (quoting *White*, 492 F.3d at 415).

We have previously found that the failure to find facts sufficient to show that a defendant acted with the requisite *mens rea* for a second-degree murder cross-reference constitutes reversible error. *Harris*, 552 F. App'x at 441; *see also Milton*, 27 F.3d at 208 ("We are disturbed by the district court's failure to make any findings relevant to the elements of second degree murder. The court did not find that [the defendant] acted with malice aforethought. . . ."); *United States v. Scheiblich*, 788 F. App'x 305, 312 (6th Cir. 2019) ("As for the attempted murder, the district court never reached the issue of whether [the defendant] had the requisite mental state. . . . And the district court must reach this issue first."). In this case, the district court summarily stated that the "defendant caused the death" of the victim. Tr. Sent'g Hr'g, R. 182, Page ID #1685. Although

this language was indeed sufficient "to the threshold inquiry of whether *any* homicide cross-reference was warranted," the reliance on this language alone, "without a concordant finding of malice aforethought," was procedurally unreasonable to apply the cross-reference of second-degree murder. *Harris*, 552 F. App'x at 441 (emphasis in original).

To be sure, certain cases in the Sixth Circuit have held that, "[e]ven if the district judge does not make detailed findings as to these supporting facts, the Court of Appeals need not remand the case" and may review the record to determine if the court properly applied the cross-reference. *United States v. Vaught*, 133 F. App'x 229, 233 (6th Cir. 2005); *see also Milton*, 27 F.3d at 208. Unlike in the line of cases that subscribe to this reasoning, Mills' sentence must be vacated because not only did the district court fail to make *detailed* findings on the record, but it failed to make *any* findings of fact related to the second-degree murder cross-reference. Where the district court failed to make any findings related to Defendant's dispute of certain facts at sentencing, it is not the duty or right of this Court to engage in the detailed fact-finding necessary to make this determination for the first time.[7] *United States v. Viney*, 728 F. App'x 479, 482 (6th Cir. 2018) ("[A]ppellate courts must constantly have in mind that their function is not to decide factual issues *de novo*.") (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

The district court did not make specific findings of fact relevant to the likelihood that Defendant caused the death of Matthews, the Defendant's justification argument, or the *mens rea*

---

[7] By way of example and not limitation, the record supports that the district court could find that Mills' mental state was more similar to voluntary manslaughter, which is appropriate where there is "a sudden quarrel or heat of passion." 18 U.S.C. § 1112(a). Alternatively, the district court could find Mills' mental state was culpable enough to be considered a "malice aforethought," which would implicate the second-degree murder cross-reference. 18 U.S.C. § 1111(a). Either way, this fact is not for this Court to decide.

required to prove second-degree murder. Because the court is required to find specific facts by a preponderance of the evidence, and the Sixth Circuit requires "literal compliance" with Federal Rule of Criminal Procedure 32(i)(3)(B), the district court abused its discretion in applying the cross-reference to second-degree murder. *United States v. Ross*, 502 F.3d 521, 531 (6th Cir. 2007).

### III. CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** Mills' conviction, **VACATES** the sentence imposed by the district court, and **REMANDS** for resentencing consistent with this opinion.